# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

KATHLEEN J. MYERS, on behalf of the )
Seventy Seven Energy Inc. Retirement )
& Savings Plan and a class of similarly )
situated participants of the Plan, )
)
        Plaintiff, )
)
v. ) Case No. CIV-17-200-D
)
ADMINISTRATIVE COMMITTEE, )
SEVENTY SEVEN ENERGY, INC. )
RETIREMENT & SAVINGS PLAN; *et al.*, )
)
        Defendants. )

## O R D E R

Currently before the Court are the Committee Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint [Doc. No. 45] and Defendant Principal Trust Company's Motion to Dismiss [Doc. No. 46],[1] filed pursuant to Fed. R. Civ. P. 12(b)(6). Both Motions are fully briefed.[2] Because the Motions raise overlapping issues, they are taken up together.

---

[1] The "Committee Defendants" are Defendant Administrative Committee of the Seventy Seven Energy, Inc. Retirement & Savings Plan, and individual committee members, Defendants Cary Baetz, Karl Blanchard, Christin Borden, Linda Clark, Clint Cover, Gino DeMarco, Lance Haffner, and Jerome Loughbridge. Defendant Delaware Charter Guarantee & Trust Company uses its trade name.

[2] The parties' respective briefs are: Plaintiff's Brief in Opposition to the Committee Defendants' Motion to Dismiss [Doc. No. 49]; Plaintiff's Brief in Opposition to Principal Trust Company's Motion to Dismiss [Doc. No. 50]; the Committee Defendants' Reply in Support of Their Motion to Dismiss [Doc. No. 52]; and Principal Trust Company's Reply in Support of Motion to Dismiss [Doc. No. 51]. The parties have also filed supplemental briefs [Doc. Nos. 59 & 60] and multiple notices of supplemental authority [Doc. Nos. 55, 61-62, 66-69, 77].

## Factual and Procedural Background

Plaintiff Kathleen Myers brings suit under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., as a participant in the Seventy Seven Energy Inc. Retirement & Savings Plan (the "Plan"), to obtain equitable relief and damages to which the Plan and its participants allegedly are entitled due to Defendants' breaches of fiduciary duties.   The Committee Defendants are alleged to be administrators and fiduciaries of the Plan, and Principal Trust Company ("Principal") serves as the trustee under a directed trust agreement of a trust that holds the Plan's assets.   The Plan is a "defined contribution" or "individual account" plan as defined by ERISA, 29 U.S.C. § 1002(34), established by Seventy Seven Energy Inc. ("SSE") to provide retirement income for its employees.

SSE is a spinoff of Chesapeake Energy Corporation ("Chesapeake") formed on June 30, 2014, from a wholly-owned subsidiary, Chesapeake Oilfield Operating, L.L.C. The Plan was established on July 1, 2014, as a spinoff from the Chesapeake Energy Corporation Savings and Incentive Stock Bonus Plan, and initially was funded by a transfer of assets from the parent plan that included Chesapeake common stock.   The Plan allows participants to defer a percentage of their employment income by making elective contributions (401(k) contributions), and allows SSE to match a percentage of participants' contributions and make discretionary contributions to an employee stock ownership plan ("ESOP") in the form of SSE common stock.

Plaintiff claims the Committee Defendants breached fiduciary duties to the Plan and its participants by: 1) "allowing the Plan to buy and hold Chesapeake stock in the ESOP

because . . . Chesapeake stock was not a 'qualifying employer security'" so "inclusion of Chesapeake stock in the ESOP was a *per se* violation of ERISA" (Am. Compl. [Doc. No. 39] ¶ 108); 2) imprudently investing and maintaining the investment in Chesapeake stock because they "knew or should have known that Chesapeake was not, and had never been, a suitable and appropriate investment for the Plan" (*id*. ¶ 111); 3) "failing to diversify Plan investments" (*id*. ¶ 114); and 4) failing to provide adequate disclosures "concerning the Plan's investments in Chesapeake" (*id*. ¶ 116).   Plaintiff claims Principal breached its fiduciary duties by allowing the alleged ERISA violation to occur and by imprudently permitting the Plan to own Chesapeake stock (*id*. ¶¶ 121-123).[3]   Plaintiff alleges "[t]he Plan should have divested itself of Chesapeake stock immediately following the spin-off" and Defendants' failure to divest caused "a substantial portion of the losses suffered" from a decline in value of the Chesapeake stock.   *Id*. at ¶ 133.

After the original Complaint was served, the parties agreed on a case management schedule for identification and joinder of the proper defendants, amendment of Plaintiff's pleading, and briefing of responsive motions.   In keeping with that schedule, Plaintiff filed the Amended Complaint, and Defendants filed the instant Motions challenging the sufficiency of Plaintiff's pleading to state a claim on which relief can be granted.   No

---

[3]   Plaintiff also seeks to impose co-fiduciary liability on all defendants for allegedly participating in, enabling, or failing to remedy any breach of duty committed by another fiduciary. *See* 29 U.S.C. § 1105(a).   This claim is derivative of a viable claim for some other breach.   *See*, *e.g.*, *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 952 n.2 (9th Cir. 2014); *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 368 (2d Cir. 2014).

discovery has been requested, and no motion to certify the proposed class of participants alleged in the Amended Complaint has been filed.

The Committee Defendants assert:  1) the decision to retain Chesapeake stock in the Plan is exempt from challenge because the stock is a "qualifying employer security" as defined by ERISA; 2) if not exempt from the diversification requirement, the Committee Defendants cannot be held liable for a failure to diversify because participants had many investment options and they decided whether to retain Chesapeake stock in their accounts; 3) Plaintiff's factual allegations are based on public information and fail to show a breach of the duty of prudent investment under *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014); and 4) the alleged facts do not show a breach of any duty of disclosure because no general duty of disclosure exists, no material misrepresentation is alleged, and no specific disclosure obligation under 29 C.F.R. § 2520.102-2 is implicated.

Principal contends its only duty as a directed trustee "was to follow the reasonable directions of the Committee Defendants so long as they were (1) in accordance with the Plan, and (2) not contrary to ERISA."  *See* Principal's Mot. at 1, 7 (citing 29 U.S.C. § 1103(a)(1)).  Principal asserts that Plaintiff's action against it must be dismissed because:  1) the factual allegations on which liability depends "are contradicted by the very documents Plaintiff cites in the Amended Complaint" (*id*. at 6); 2) the Chesapeake stock was a permissible investment under the Plan and the directed trust agreement, regardless whether it was a "qualifying employer security" (*id*. at 8-9); and 3) Plaintiff's contention that holding the Chesapeake stock in the ESOP component of the Plan violated ERISA "is meritless for at least four reasons," primarily because the notion "that any stock

is 'held' in the ESOP component is misguided and wrong" and because "[i]t simply does not matter where any Plan investment is 'held' for purposes of ERISA" (*id.* at 9-10, 13). Finally, like the Committee Defendants, Principal argues that Plaintiff's claim for breach of the duty of prudence fails under the standard announced in *Dudenhoeffer* for investments in publicly traded stock based on publicly available information.

## Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, in assessing plausibility, a court must first disregard conclusory allegations and "next consider the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

Ordinarily, "the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). But there are several well-established exceptions: "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice." *Id.* (internal quotations and citations omitted) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), and *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)); *see Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008); *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). Matters subject to judicial notice and appropriate for consideration under Rule 12(b)(6) include a court's "own files and records, as well as facts which are a matter of public record." *See Tal*, 453 F.3d at 1265 n.24.

In this case, Plaintiff does not attach any documents to her pleading, but she quotes from and cites extensively Plan-related documents, the directed trust agreement, and public records such as SEC filings. Consistent with the above-cited authorities, Defendants have submitted copies of the documents with their Motions. Because Plaintiff does not dispute the authenticity of these documents, the Court finds them to be appropriate for consideration. *See GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be

considered on a motion to dismiss."); *see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104 (10th Cir. 2017); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). Further, where Plaintiff misquotes or omits pertinent portions of the cited documents, the documents control. *See GFF Corp.*, 130 F.3d at 1385 ("factual allegations that contradict . . . a properly considered document are not well-pleaded facts that the court must accept as true"); *accord Farrell Cooper Mining Co. v. U.S. Dep't of Interior*, 728 F.3d 1129, 1237 n.6 (10th Cir. 2013); *Peterson v. Martinez*, 707 F.3d 1197, 1206 (10th Cir. 2013).[4]

## Plaintiff's Allegations

In addition to the facts summarized above, Plaintiff alleges that she "held shares of Chesapeake stock in her Plan account" from July 1, 2014, to the present, and that the value of those shares has "diminished considerably" during this time, resulting in a financial loss. *See* Am. Compl. ¶¶ 10-11. The Plan provided an individual account for each participant and benefits based on the amount contributed to the participant's account, together with any income, expenses, gains, losses, or forfeitures of other accounts that could be allocated to the participant's account. The Plan covered all SSE employees that met certain eligibility requirements. SSE employees were automatically enrolled in the Plan, initially deferred four percent of their pay, and automatically increased contributions in subsequent

---

[4] Defendants have also submitted documents that are not referred to in the Amended Complaint, such as a "Direction to Trustee" form [Doc. No. 46-4] and a document providing investment information for Plan participants dated January 1, 2016 [Doc. No. 45-9]. These documents cannot properly be considered under Rule 12(b)(6).

years of employment (unless they elected a different percentage). No Chesapeake employees were covered by the Plan.

SSE matched participants' contributions up to a maximum percentage, and could make discretionary contributions to participants' accounts on an annual basis. Both types of contributions by SSE were made in the form of "Qualifying Employer Securities" or "common stock issued by the Employer" – that is, SSE common stock – and constituted the ESOP component of the Plan. *Id*. ¶¶ 30-31 (quoting Plan Document at 14, 15; Plan Prospectus at 14). The Plan provided "22 core investment funds" in which participants could elect to invest their contributions, but SSE stock was not an investment option for participants because "this investment option is not diversified and exposes investors to a higher risk of loss than other investment options." *Id.* ¶¶ 32-33 (quoting Plan Prospectus at 10, 14). Chesapeake common stock also was not an investment option. *Id.* ¶ 93; *see* Plan Prospectus at 10-14.

SSE established a trust fund to hold and distribute the Plan's assets, and appointed Principal as the trustee. The trust agreement described Principal's duties and powers, and specified the types of financial products and investments that could be made, including annuity contracts, money market funds, exchange traded securities, mutual funds, and qualifying employer securities. *See* Am. Compl. ¶ 35 (citing Trust Agreement, § .05(a)). Principal became a "directed trustee," subject to the direction of the Committee Defendants, "unless such direction is contrary to the terms of the Plan or ERISA." *Id.* ¶¶ 35, 45; *see* Trust Agreement § .04.

When the Plan was established on July 1, 2014, as a spinoff from Chesapeake's employee savings plan, it received a transfer of assets from the Chesapeake plan valued at $196,210,229, which included Chesapeake stock valued at $87,038,874 (or 44.3 percent). *See* Am. Compl. ¶¶ 26, 36. According to Plaintiff, "[t]he Plan's 2014 Financial Statements incorrectly describe the Chesapeake stock as an 'employer security.'" *Id.* ¶ 37.[5] After SSE's spinoff from Chesapeake, the two corporations were separate and independent, publicly-traded companies. Chesapeake had no ownership interest in SSE, and they were not affiliates of one another. Chesapeake was not an employer of any Plan participants.

Plaintiff alleges that Chesapeake stock was historically risky and volatile and it "experienced precisely the volatility that might be expected during the [proposed] Class Period." *See* Am. Compl. ¶ 48. Specifically, the nature of Chesapeake's business in oil and gas production, the fluctuation of oil and gas prices, the volatility of energy markets, and Chesapeake's financial condition combined to make Chesapeake stock a particularly risky investment that "was not a suitable option for the investment of retirement assets" when it received the Chesapeake stock on July 1, 2014. *Id.* ¶ 57. Further increasing the

---

[5] Although Plaintiff cites "Financial Statements" throughout the Amended Complaint, she does not identify the documents to which she refers. Defendants submit for consideration annual financial reports filed with the Securities and Exchange Commission (Form 11-K) and the Internal Revenue Service (Form 5500). *See* Comm. Defs.' Mot., Exs. 1, 5 & 7 [Doc. Nos. 45-2, 45-6 and 45-8]; Principal's Mot., Ex. 4 [Doc. No. 46-5]. In her response briefs, Plaintiff refers to these exhibits without clarifying which ones provide the basis of her claims; the spot cites in the Amended Complaint do not appear to fit Defendants' exhibits. It appears, however, that both types of reports contain some of the material on which Plaintiff relies for her "employer security" allegation. As discussed *infra*, Defendants contend the allegation is a legal conclusion based on Plaintiff's misreading of the documents.

riskiness of Chesapeake stock during 2014 and 2015 was a sharp drop in share price, energy market predictions of further decline in oil and gas prices, and corporate debt levels that allegedly caused financial analysts to label Chesapeake as a stock for "energy risk-takers" in 2015 and as "an unprecedented mess" in 2016. *Id*. ¶¶ 58-63, 69-77. The market price of Chesapeake stock fell from $29 per share in July 2014 to $7 per share in October 2015, and has remained low, losing "approximately 80% of its value." *Id*. ¶¶ 58, 71, 77.

Plaintiff complains that "[t]he Committee Defendants ignored these risks and failed to take any action that a prudent fiduciary would have taken to stop the massive losses that Plan participants were suffering due to Chesapeake's free-falling share price" (*id*. ¶ 64), particularly "given the Plan's massive, overly-concentrated holding of Chesapeake stock" (*id*. ¶ 65) and the ESOP's investment in SSE stock (because SSE was in the same industry and its success was "directly dependent on Chesapeake"). *Id*. ¶ 66.[6] Instead, Plaintiff alleges the amount of Chesapeake stock held by the Plan increased "throughout 2014 and 2015" due to additional purchases. *Id*. ¶¶ 67, 83, 85. Plaintiff acknowledges that the Chesapeake stock held by the Plan at the end of 2014 was a lesser percentage of its assets (then "comprising more than 30% percent of the Plan's assets"), but she attributes this

---

[6] Not stated by Plaintiff, SSE sought bankruptcy protection in June 2016 and, through a Chapter 11 reorganization, canceled its outstanding stock. *See In re Seventy Seven Energy Inc.*, Case No. 16-11410, Pet. (D. Del. June 7, 2016); Tom Hals, *Oilfield Service Firm Seventy Seven Energy Files for Bankruptcy*, Reuters (June 7, 2016), https://www.reuters.com/article/seventyseven-bankruptcy-idUSL1N18Z1KL; *see also* Katy Stech, *Judge Clears Seventy Seven Energy to Leave Bankruptcy*, Wall St. J. (July 13, 2016), https://www.wsj.com/articles/judge-clears-seventy-seven-energy-to-leave-bankruptcy-1468435109.

change to participants' added contributions to other investment options and the lower market value of Chesapeake stock.  *Id.* ¶ 84.

## Discussion

**A.      Was Chesapeake Stock a "Qualifying Employer Security" Under ERISA?**

Plaintiff and the Committee Defendants strongly disagree on the answer to this question, but neither side presents any caselaw directly on point.[7]   While the Motions were pending, the Committee Defendants provided notice of one district court decision that has addressed the issue and rejected their position.  *See Schweitzer ex rel. Phillips 66 Sav. Plan v. Inv. Comm.*, 312 F. Supp. 3d 608 (S.D. Tex. 2018), *appeal filed*, No. 18-20379 (5th Cir. June 12, 2018) (oral argument held March 11, 2019).   In *Schweitzer*, the court held that after a corporate spinoff – where a subsidiary of ConocoPhillips Corporation became a separate and independent company, Phillips 66 Company, Inc. – stock of ConocoPhillips that was transferred to an employee savings plan established by Phillips 66 no longer qualified as an "employer security," even though the stock was attributable to employee-participants' accounts in their former (ConocoPhillips) ESOP.  *See Schweitzer*, 312 F. Supp. 3d at 611-12, 617-18.   The court relied primarily on the language of the plan.[8]

---

[7]   Principal takes no position on this issue – although it contends Plaintiff's argument is wrong – because the directed trust agreement permitted the Plan to hold the Chesapeake stock (an exchange traded security) so the stock could properly be received into the Plan's trust fund from the Chesapeake plan.   Principal asserts that the controlling documents refute Plaintiff's contention that the Chesapeake stock was held in the ESOP component of the Plan, as discussed *infra*.

[8]   The court also found support in an IRS private letter ruling that Plaintiff cites in this case.   See Pl.'s Resp. Comm. Defs.' Mot. at 8-9.   Private letter rulings "may be cited as evidence of administrative interpretation."   *True Oil Co. v. Comm'r*, 170 F.3d 1294, 1302 (10th Cir. 1999) (internal quotation omitted).   But the Tenth Circuit has determined they are "inappropriate for judicial notice."   *See Am. Stores Co. v. Comm'r*, 170 F.3d 1267, 1270 (10th Cir. 1999); *accord*

Under ERISA, "[t]he term 'employer security' means a security issued by an employer of employees covered by the plan, or by an affiliate of such employer."   *See* 29 U.S.C. § 1107(d)(1).[9]   Stock issued by a former employer – with no relationship to employees covered by the plan of a separate, spun-off corporation – does not appear to fit that definition.   The Committee Defendants contend the focus of the phrase "issued by an employer" should be the date on which the stock was issued and that the Chesapeake stock was issued at a time when Plan participants were employed by Chesapeake.   *See* Comm. Defs.' Mot. at 10.   Plaintiff contends this argument is contrary to "ERISA's plain words" because the statutory definition of "employer" speaks in present terms of a "person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan."   *See* Pl.'s Resp. Comm. Defs.' Mot. at 8 (citing 29 U.S.C. § 1002(5)).

Upon consideration, the Court is not persuaded by the Committee Defendants' argument that the status of the Chesapeake stock hinges on the date of issue.   The argument assumes that the stock held by the Chesapeake plan was newly issued when it was contributed to employee-participants' accounts, rather than received as a transfer of corporate stock or an acquisition of previously issued stock.   Otherwise, there would be no way of knowing whether employee-participants in the Chesapeake plan were in fact

---

*Tomlinson v. El Paso Corp.*, 653 F.3d 1281, 1296 (10th Cir. 2011).   Further, the rulings are issued by the IRS under its authority to enforce the Internal Revenue Code.   *See* 26 C.F.R. § 7805(a).

[9]  A "qualifying employer security" is "an employer security which is – (A) stock, (B) a marketable obligation . . . , or (C) an interest in a publicly traded partnership (as defined in section 7704(b) of the Internal Revenue Code of 1986) . . . ."   29 U.S.C. § 1107(d)(5).

employed by Chesapeake at the time the stock was issued. More importantly, the argument is made without any reference to principles of statutory construction, which begin and end with "the plain language of the statute" if "the statute's language is clear" and the result is not "an absurd application of the law." *See Levorsen v. Octapharma Plasma, Inc*., 828 F.3d 1227, 1236 (10th Cir. 2016). The Court finds that the Committee Defendants' argument requires a strained, unworkable reading of the statutory definition of "employer security."

Further, the Plan-related documents identify only SSE stock as "employer securities." The Plan document itself expressly defines the term "qualifying employer securities" to mean "common stock issued by the Employer," with "Employer" defined as "the Primary Employer" or SSE. *See* Comm. Defs.' Mot., Ex. 2 [Doc. No. 45-3] and Principal's Mot., Ex. 1 [Doc. No. 46-2] (hereafter, "Plan"), § 1.02 at 9, 14.[10] The Plan document designates qualifying employer securities as the ESOP portion of the Plan. *Id*. § 4.02(a). Similarly, the Plan's summary plan description and prospectus make clear that all matching and discretionary contributions to the ESOP (that is, employer securities) would be made in the form of SSE stock. *See* Comm. Defs.' Mot., Ex. 4 [Doc. No. 45-5] and Principal's Mot., Ex. 5 [Doc. No. 46-6] (hereafter, "SPD") at 27; Comm. Defs.' Mot., Ex. 3 [Doc. No. 45-4] (hereafter, "Prospectus") at 14, 30. These provisions reinforce the

---

[10] "Employer" also includes any successor corporation that assumes the obligations of the Plan or "any Predecessor Employer that maintained this Plan." *Id*. at 9. Chesapeake may have been a "Predecessor Employer" (*id*. at 13), but there is no indication Chesapeake maintained "this Plan," which was effective July 1, 2014. *See* Plan, Intro. at 1.

view that the shares of Chesapeake stock transferred to the Plan were not "employer securities" after the spinoff.

As argued by Defendants, the consequence of a finding that Chesapeake stock is not a "qualifying employer security" under ERISA is that fiduciaries of the Plan lose an exemption from the duty to diversify provided by 29 U.S.C. § 1104(a)(2). *See Dudenhoeffer*, 134 S. Ct. at 2463 ("ESOP fiduciaries are subject to the same duty of prudence that applies to ERISA fiduciaries in general, except that they need not diversify the fund's assets"). Without the exemption, Plaintiff must still sufficiently allege that the Committee Defendants breached the duty to diversify, and that Principal failed a duty to correct the breach, in order to state a plausible claim against them. The question of whether Plaintiff has sufficiently pleaded a failure-to-diversify claim with regard to the Chesapeake stock is addressed *infra*.

Under Plaintiff's view, whether Chesapeake stock is an "employer security" also affects her claim that Defendants violated ERISA by holding Chesapeake stock in the ESOP component of the Plan. Defendants contend this claim is based on a misreading of the Plan documents, and is meaningless, because all assets of the Plan were held in a single fund and there was no separate account designated as an "ESOP fund." Plaintiff argues, as alleged in her Amended Complaint, that "Chesapeake stock was held in the Plan's ESOP component" based on the "Plan's 2014 Financial Statements at p.11 and at Schedule H, Line 4i." *See* Am. Compl. ¶ 37; Pl.'s Resp. Comm. Defs.' Mot. at 5 (citing Am. Compl. ¶ 89, which cites "Plan's 2014 Financial Statements at p.11").

Of the two financial reports filed by the Plan for the year ending December 31, 2014, only the IRS Form 5500 [Doc. No. 46-5] contains any information on a page 11 regarding the Chesapeake stock other than the value of the investment. The auditor's report attached to the Form 5500 states on page 11 under "Note 5" that, like SSE common stock, "the Chesapeake common stock transferred to the Plan during the spin-off is considered non-participant-directed for this disclosure." *See* Form 5500 at 36 (ECF page numbering). This same statement appears in note 5 on page 14 of the SEC filing. *See* Form 11-K [Doc. No. 45-2] at 17 (ECF page numbering). Each of the reports contains a Schedule H, Line 4i list of assets that indicates the Chesapeake common stock was not participant-directed. *See* Form 5500 at 40 (ECF page numbering); Form 11-K at 21-22 (ECF page numbering). From these materials, the Court finds Plaintiff's allegation that the Chesapeake stock was in the "ESOP component" of the Plan is unsupported by the materials on which she relies.[11]

Further, the Court finds that Plaintiff's allegation conflicts with the controlling Plan-related materials. The Plan document expressly states that the ESOP component of the Plan "means that part of the assets of the Trust Fund that are designated to be held primarily or exclusively in Qualifying Employer Securities," which was a defined term, discussed *supra*. *See* Plan § 1.02 at 15. The Plan document dictated that the Plan would consist of two components: 1) a non-ESOP component made up of "contributions that are invested in funds other than company stock;" and 2) an ESOP component made up of "contributions

---

[11] A statement that the Chesapeake stock was not participant-directed accurately reflects the fact that it was not an investment option for participants to select. Even a list noting the Chesapeake stock as an employer security (Form 5500 at 43 (ECF numbering)) does not support a conclusion that the stock was part of the Plan's ESOP.

invested in company stock" and "intended to primarily invest in common stock of the Employer." *Id.*, Intro. at 1. The Plan provided an express "ESOP Designation" for "[t]he portion of the Plan that consists of Participants' Accounts holding Qualified Employer Securities . . . and is designed to invest primarily in Qualified Employer Securities." *Id.* § 4.02(a). The ESOP was not to be held in a separate fund: "All shares of Qualified Employer Securities held under the Plan will be held in the Trust Fund in the name of the Trustee or the nominee of the Trustee." *Id.* As discussed *supra*, both the summary plan description and prospectus made clear that the ESOP would consist of matching and discretionary contributions made in the form of SSE stock.

Based on the express language of the Plan-related documents, Plaintiff's allegation that Defendants violated ERISA by holding Chesapeake Stock, or allowing it to be held, in the ESOP component of the Plan is unfounded. Therefore, although the Court sides with Plaintiff on the question of whether the Chesapeake stock was an employer security, the Court finds that the Amended Complaint fails to state a plausible claim that the Committee Defendants breached a fiduciary duty by engaging in a "*per se* violation of ERISA." *See* Am. Compl. ¶ 108.

**B.      Has Plaintiff Alleged a Breach of the Duty to Diversify?**

Plaintiff's duty-to-diversify claim rests on the fact that the transfer of Chesapeake stock from the employees' former ESOP to the SSE Plan resulted in an asset fund in which over 40 percent of its value consisted of a single-stock investment. *See* Am. Compl. ¶¶ 80, 114. Plaintiff claims the resulting Plan investment "was over-concentrated in one company whose share price was extremely volatile" and given this "excessive holding in

Chesapeake stock and [SSE]'s dependence on Chesapeake and the acknowledged risks associated with a lack of diversification, a prudent fiduciary would have sold the Chesapeake stock at the time of the spin-off to properly diversify the Plan's assets." *Id.* ¶¶ 80-81 (emphasis omitted). Plaintiff further claims "the Committee Defendants instead allowed the Plan to acquire even more Chesapeake stock in 2014" and 2015. *Id.* ¶¶ 83, 85, 114. Plaintiff acknowledges the percentage of the Plan's asset value attributable to Chesapeake stock decreased over time (reaching 30% by "the end of 2014"), but the change allegedly was due to participants' contributions in other investments and the declining value of Chesapeake stock rather than any action taken by the Committee Defendants. *Id.* ¶¶ 84-85. Plaintiff notes the Plan's holding in Chesapeake stock "was greater than the total of [the] Plan's next five largest holdings." *Id.* ¶ 84 (emphasis omitted).

Plaintiff's arguments regarding the diversification issue are based, in part, on an unfounded view of the acquisition of Chesapeake stock as an investment decision made by the Committee Defendants. All Plan-related documents and financial statements make clear that the Plan's holding of Chesapeake common stock came through a transfer of assets in the spinoff from the Chesapeake plan. Plaintiff's real complaint is that the Committee Defendants "should have divested [the Plan] of Chesapeake stock immediately following the spin-off and avoided any [later] purchase of Chesapeake stock." *Id.* ¶ 133.

The Committee Defendants' position (apart from the alleged exemption) is that a duty to diversify looks at a plan's investments as a whole, rather than a single investment, and that the Plan's holdings of Chesapeake stock "were attributable to the participants' individual decisions to retain the Chesapeake stock." *See* Comm. Defs.' Mot. at 15 (citing

*Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009)).[12]   They

argue that "[m]uch of this stock was held by participants as a result of Chesapeake's

voluntary employer contributions to the [Chesapeake plan] in Chesapeake stock."   *Id*.

The corollary of this argument, however, is that some of the Chesapeake stock held by the

Plan did not come from past Chesapeake contributions.

Plaintiff alleges, and the Plan's financial reports support the allegation, that the Plan

continued to acquire more Chesapeake stock after the spinoff.   The Plan's Form 11-K

filings for both 2014 [Doc. No. 45-2] and 2015 [Doc. No. 45-6] reflect in Schedule H,

Line 4j that additional purchases of Chesapeake stock occurred.   Thus, it appears the Plan

continued to invest in Chesapeake stock even though participants were not allowed to

choose this investment.   The legal authorities on which Defendants rely to argue that the

lack of diversification was the participants' choice do not address the situation presented.[13]

---

[12]   In support of the Motion, the Committee Defendants also contend their conduct is
protected by § 404(c) of ERISA because any losses were due to participants' direction of their
individual accounts.   *See* Comm. Defs.' Mot. at 16.   However, in reply to Plaintiffs' argument
that § 404(c) provides an affirmative defense and should not be considered under Rule 12(b)(6),
the Committee Defendants say that consideration of their § 404(c) defense is unnecessary.   *See*
Comm. Defs.' Reply Br. at 5 n.1.   Therefore, the Court does not consider it.

[13]   It may be the Plan's additional purchases were the result of dividend reinvestments.
The Court notes that the Plan allowed participants to elect what would be done with cash dividends
of qualified employer securities and, in the absence of an election, the participant was deemed to
have elected reinvestment.   *See* Plan, § 4.02(f)(3).   The Court has determined Chesapeake stock
was not a qualified employer security.   Further, even if the Committee Defendants' view were
accepted, the Plan required that participants be given an opportunity to revise their elections.   *Id*.
The Amended Complaint and the record are silent regarding any elections that were made.

Principal argues that it had no duty as a directed trustee to ensure that the Plan's holdings were diversified.[14]   In making this argument, Principal does not deny it was a fiduciary but, instead, focuses on the limited role of a directed trustee under ERISA, which requires only that the trustee comply with proper directions of a plan's named fiduciary. *See* 29 U.S.C. § 1103(a)(1).   Further, the directed trust agreement in this case expressly provided that Principal "is not responsible for any aspect of the Plan's administration" and "is not responsible for choosing, recommending, or investigating investments."   *See* Principal's Mot., Ex. 2 [Doc. No. 46-3], § .04.   Plaintiff's claim that Principal should have taken action to divest the Plan of Chesapeake stock and prevent additional investment seeks to hold Principal liable for breach of a putative duty that Principal did not owe.   Where a directed trustee's limited role "does not encompass the activities alleged as a breach of fiduciary duty," the complaint fails to state a viable claim.   *See Renfro v. Unisys Corp.*, 671 F.3d 314, 323 (3d Cir. 2011).   Under Plaintiff's allegations and the circumstances of this case, the Amended Complaint fails to state a breach of fiduciary duty against Principal based on a failure to diversify assets of the Plan.

**C.    Has Plaintiff Alleged a Breach of the Duty of Prudence?**

Both the Committee Defendants and Principal persuasively argue that Plaintiff has failed to allege a duty-of-prudence claim under the *Dudenhoeffer* standard applicable to

---

[14]   Principal advances this argument even though it takes the position that the Second Amended Complaint does not assert a failure-to-diversify claim against it.   *See* Principal's Reply Br. at 4, 9.   Giving Plaintiff the benefit of any doubt, the Court elects to consider the argument.

claims involving publicly traded securities and publicly available information.[15]   Under

this standard, "allegations that a fiduciary should have recognized from publicly available

information alone that the market was over- or undervaluing the stock are implausible as a

general rule, at least in the absence of special circumstances."   *Dudenhoeffer*, 134 S. Ct.

at 2471.   Because "a fiduciary usually is not imprudent to assume that a major stock

market provides the best estimate of the value of the stocks traded on it," a plaintiff must

"point[ ] to a special circumstance affecting the reliability of the market price as an

unbiased assessment of the security's value in light of all public information that would

make reliance on the market's valuation imprudent."   *Id*. at 2471-72 (internal quotations

and citations omitted).

Plaintiff neither alleges any special circumstance in her Amended Complaint, nor

argues that the *Dudenhoeffer* standard is satisfied.   She instead seems to argue that the

---

[15]   The Committee Defendants also argue that the decision not to require Plan participants to divest of Chesapeake stock should be assessed under the *Dudenhoeffer* standard for claims based on a fiduciary's access to inside information.   *See* Comm. Defs.' Mot. at 19 ("'a plaintiff must plausibly allege an alternative action . . . that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it'") (quoting *Dudenhoeffer*, 134 S. Ct. at 2472) (alteration by Defendants).   In reply to Plaintiff's argument that her duty-of-prudence claim is not based on inside information, the Committee Defendants contend *Dudenhoeffer*'s "more harm than good" standard is not reserved for such circumstances.   *See* Comm. Defs.' Reply Br. at 6-7.   This argument is not supported by any citation of legal authority, and ignores the express limitation of *Dudenhoeffer* and cases following it.   *See Amgen Inc. v. Harris*, 136 S. Ct. 758, 759 (2016); *see also Singh v. RadioShack Corp*., 882 F.3d 137, 145 (5th Cir. 2018) (*Dudenhoeffer* "establishes different standards for duty-of-prudence claims based on public information and insider information, respectively.") (footnote omitted).   The standard protects against the "potential for conflict" encountered by ESOP fiduciaries who must also comply with securities laws.   *See Dudenhoeffer*, 134 S. Ct. at 2469, 2472-73; *Amgen*, 136 S. Ct. at 759-60. The Court therefore rejects the Committee Defendants' argument as ill-founded and unpersuasive.

standard does not apply because her imprudent investment claim is not based on an alleged over-valuation of the Chesapeake stock but, instead, an unacceptable degree of risk.[16]

The Court addressed this same issue in *Gernandt v. SandRidge Energy, Inc.*, Case No. CIV-15-834-D, 2017 WL 3219490 (W.D. Okla. July 28, 2017), and rejected Plaintiff's position. Relying on *Rinehart v. Lehman Brothers Holdings, Inc.*, 817 F.3d 56, 66 (2d Cir. 2016), and the weight of federal authority, the Court concluded that the standard announced in *Dudenhoeffer* applies equally to risk-based and value-based claims. *Gernandt*, 2017 WL 3219490 at *9-10. The Court adheres to that conclusion in this case. Therefore, the Court finds that Plaintiff has failed to state a plausible claim that Defendants breach their duty of prudence.

**D.      Has Plaintiff Alleged a Breach of the Duty of Disclosure?**

Plaintiff claims the Committee Defendants breached general duties of disclosure because the Plan documents – specifically, the summary plan description and the prospectus – did not inform participants of the alleged fact that the ESOP would hold Chesapeake stock. *See* Am. Compl. ¶¶ 88- 90. To support this claim, Plaintiff points to the fact that the prospectus did not list Chesapeake stock as an investment option or provide historical information for it. *Id*. ¶¶ 92-93. Plaintiff focuses on these same allegations in her briefs, relying on an alleged general duty of plan fiduciaries to disclose material

---

[16] In support of her prudent investment claim, Plaintiff also argues that Defendants breached a different duty, the continuing duty to monitor investments and remove imprudent ones. *See* Pl.'s Resp. Comm. Defs.' Mot. at 20-21 (citing *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828 (2015), and other cases); Pl.'s Resp. Principal's Mot. at 15-16 (same). The Amended Complaint does not assert a claim that Defendants breached this distinct duty.

information.   *See* Pl.'s Resp. Comm. Defs.' Mot. at 22-24.   Under the Court's ruling that

the Chesapeake stock was not part of the ESOP component of the Plan nor held in an ESOP

fund, Plaintiff's allegations fail to state a breach of any general duty of disclosure.[17]

## E.    Has Plaintiff Alleged a Breach of Co-Fiduciary Duty?

Plaintiff includes in the Amended Complaint conclusory allegations that all

Defendants are liable as co-fiduciaries under § 1105(a) because each of them knowingly

participated in, enabled, or failed to remedy another fiduciary's breach of duty based on

the Plan's improper investment in Chesapeake stock.   This claim is derivative of a viable

claim for some other breach.   *See*, *e.g.*, *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d

945, 952 n.2 (9th Cir. 2014); *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 368 (2d Cir.

2014).   The Court has found that the Amended Complaint only states a plausible claim

that the Committee Defendants breached a duty to diversify the Plan's assets by failing to

take any action regarding the holding of Chesapeake stock.   The question presented is

whether Plaintiff has stated any claim against Principal that would support co-fiduciary

liability for this alleged breach by the Committee Defendants.

The only theory of co-fiduciary liability of Principal argued in Plaintiff's brief in

opposition to dismissal is that Principal "enabled the Committee Defendants' fiduciary

breaches" by "not ensuring the instructions it received were proper."   *See* Pl.'s Resp.

Principal's Mot. at 24.   However, Plaintiff does not identify any improper instructions that

the Committee Defendants gave Principal.   Just the opposite, Plaintiff alleges that the

---

[17]   The Committee Defendants point out that the Tenth Circuit has yet to recognize such a
duty.   *See Jensen v. Solvay Chems., Inc.*, 625 F.3d 641, 658-59 (10th Cir. 2010).

Committee Defendants failed to take any action – that is, to give Principal any instructions – that would have reduced the unreasonable risk to plan participants from the Plan's large holding of Chesapeake stock.   The Court therefore finds that Plaintiff has failed to state a plausible claim of co-fiduciary liability against Principal.

## Conclusion

For these reasons, the Court finds that the Amended Complaint fails to state any plausible ERISA claim against the directed trustee, Principal, and fails to state any plausible ERISA claim against the Committee Defendants except a claim that they breached a fiduciary duty to diversify the Plan's investments.

IT IS THEREFORE ORDERED that the Committee Defendants' Motion to Dismiss [Doc. No. 45] is GRANTED in part and DENIED in part, and Principal Trust Company's Motion to Dismiss [Doc. No. 46] is GRANTED.[18]

IT IS SO ORDERED this 22nd day of March, 2019.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[18]   Because Plaintiff has not moved to further amend her pleading pursuant to Fed. R. Civ. P. 15(a)(2) and LCvR15.1, and because the scheduling order to be entered will set a deadline for motions to amend, the Court declines to consider at this point whether further amendment of Plaintiff's deficient pleading should be allowed.