UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHLEEN J. MYERS, on behalf of the Seventy Seven Energy Inc. Retirement & Savings Plan and a class of similarly situated participants of the Plan,<br><br>    Plaintiff,<br><br>v.<br><br>ADMINISTRATIVE COMMITTEE, SEVENTY SEVEN ENERGY, INC. RETIREMENT & SAVINGS PLAN; *et al,.*<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. CIV-17-200-D<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**ORDER REGARDING PLAINTIFF'S MOTION
FOR CLASS CERTIFICATION**

Before the Court is Plaintiff's Motion for Class Certification [Doc. No. 113], filed pursuant to Fed. R. Civ. P. 23. Plaintiff Kathleen Myers seeks to certify a Rule 23(b)(1) class of participants in the Seventy Seven Energy, Inc. Retirement & Savings Plan (the "Plan") in order to pursue an ERISA class action against Defendants under 29 U.S.C. § 1132(a)(2).[1] Plaintiff asks the Court to appoint her and a nonparty, Christopher Snider, as class representatives and the law firms who have appeared in this case as class counsel. Defendants have timely responded in opposition to the Motion, and have filed separate motions seeking to exclude the opinions of Plaintiff's expert witnesses, Samuel Halpern

---

[1] Defendants are the Administrative Committee of the Plan and its members, Cary Baetz, Karl Blanchard, Christin Borden, Linda Clark, Clint Cover, Gino DeMarco, Lance Haffner, and Jerome Loughbridge. The parties have stipulated that Defendants were fiduciaries of the Plan. *See* Joint Status Report [Doc. No. 85] at 3.

and Steve Pomerantz. *See* Defs.' Mot. Exclude Expert Testimony of Samuel Halpern [Doc. No. 120]; Defs.' Mot. Exclude Expert Testimony of Steve Pomerantz [Doc. No. 121]. All Motions are fully briefed and at issue.[2]

**Factual and Procedural Background**

Plaintiff is a former employee of Seventy Seven Energy, Inc. ("SSE") who became a participant in the Plan when it was established on July 1, 2014, to provide an employer-sponsored retirement plan for SSE employees who had been participants in a similar plan of Chesapeake Energy Corporation before SSE's spinoff from Chesapeake. Both were "defined contribution" or "individual account" plans as defined by ERISA, 29 U.S.C. § 1002(34), which allow participants to choose how their contributions will be invested. The Plan was initially funded by a transfer of assets from Chesapeake's plan that were held for the SSE participants' accounts, including a substantial number of shares of Chesapeake common stock that had been part of an employee stock ownership plan (ESOP) while the employees worked for an affiliate of Chesapeake.

Plaintiff is proceeding under the Amended Class Action Complaint [Doc. No. 39] ("Amended Complaint"), as impacted by prior orders. Defendants filed motions to dismiss that were granted in part, *see* 3/22/19 Order [Doc. No. 78], and Plaintiff filed a motion to further amend her pleading that was denied. *See* 7/24/20 Order [Doc. No. 100]. Under the

---

[2] Plaintiff's Motion is accompanied by a Memorandum in Support [Doc. No. 114] and is supported by Reply Briefs [Doc. Nos. 124 and 139]; it is opposed by Defendants' Opposition [Doc. No. 118] and Supplemental Opposition [Doc. Nos. 135 and 136]. Defendants' Motions include supporting briefs; each is opposed by Plaintiff's Opposition [Doc. Nos. 125 and 126] and further supported by Defendants' Reply [Doc. Nos. 127 and 128].

Court's rulings, the Amended Complaint states a single claim that Defendants breached a fiduciary duty to diversify the Plan's investments, as required by § 1104(a)(1)(C), by failing after the initial transfer of assets to divest the Plan of Chesapeake stock.[3]

The litigation proceeded following the Court's dismissal ruling in March 2019 under a case management order that provided for a first phase of discovery limited to class certification issues and culminated in the filing of Plaintiff's Motion. *See* Sched. Order [Doc. No. 89]. The parties agreed that expert opinions were necessary to an orderly disposition of the Motion, and the filing deadline was tied to expert disclosures. *See* Order Granting Pl.'s Unopposed Mot. Extension Time [Doc. No. 97]; 10/8/20 Order [Doc. No. 102]. Inconsistent with the plan for orderly discovery and resolution of class certification, Plaintiff first identified a new potential class representative, Christopher Snider, on the eve of her final deadline to produce expert reports. Then, instead of moving for Mr. Snider's joinder or intervention, Plaintiff's counsel filed a separate lawsuit, *Snider v. Administrative Committee*, Case No. CIV-20-977-D (W.D. Okla. Sept. 28, 2020), and moved to consolidate the cases. This strategy would have effectively undermined the long-standing schedule in this case and required additional discovery, and thus, the motion was denied. *See id*. 12/22/20 Order.

Plaintiff now attempts to inject Mr. Snider into this case by proposing to simply designate him as a co-representative of the class. *See* Pl.'s Mot. Class Certification, ¶ 2.

---

[3] This claim may encompass Plaintiff's additional theory that Defendants breached a duty to monitor the Plan's investments, as discussed in *Tibble v. Edison International*, 575 U.S. 523, 530-31 (2015). *See* 7/24/20 Order at 12-13 n.8.

Plaintiff argues that Mr. Snider can serve as a class representative without becoming a party through proper procedural mechanisms, such as intervention or joinder. *See* Pl.'s Mem. Supp. Mot. Class Certification [Doc. No. 114] at 14. The Court finds the cited legal authorities to be distinguishable and inapposite under the circumstances.[4] For the reasons fully stated in the order denying consolidation, the Court declines to entertain Plaintiff's belated and informal request to add a new party for the purpose of obtaining certification, and proceeds to consider the remaining issues presented by Plaintiff's Motion.

Plaintiff requests certification of the following proposed class:

> All participants in the Seventy Seven LLC Retirement & Savings Plan whose Plan accounts included investments in Chesapeake Energy Common Stock. Excluded from the Class are Defendants and members of the Committee during the Class Period, including their beneficiaries.

*See* Pl.'s Mot. Class Certification, ¶ 1. Despite the suggestion of a "Class Period," none is defined in the Motion or supporting briefs, and no clear definition is provided by Plaintiff's pleading.[5] Defendants point to the lack of a clearly defined class or temporal limit as a

---

[4] Plaintiff cites district court decisions involving the addition or substitution of class representatives for a certified class. *See In re Telectronics Pacing Sys. Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997) (allowing addition of class representatives for subclasses); *Pierce v. NovaStar Mortg., Inc.*, No. C05-5835RJB, 2007 WL 1475240, *3 (W.D. Wash. May 21, 2007) (unpublished) (same). Similarly, Plaintiff quotes a statement from the Manual for Complex Litigation (4th), § 21.26, which appeared in a discussion about the replacement of a class representative.

[5] The Amended Complaint filed April 17, 2017, provides two definitions: "from July 1, 2014, to the date of judgment" and "from July 1, 2014 to the present." *See* Am. Compl. ¶¶ 1, 99. A later proposed amendment would have modified the class period, "from July 1, 2014, to December 31, 2017," to account for a merger. *See* Pl.'s Mot. Amend Compl., attach. 1 [Doc. No. 91-1], Proposed Second Am. Class Action Compl. ¶ 1. During the pendency of this case, the Plan was merged into the Patterson-UTI Energy, Inc. 401(k) Profit Sharing Plan (effective December 31, 2017), after SSE completed a Chapter 11 bankruptcy reorganization. *See id.* ¶¶ 1, 25-28. Defendants assert that the Plan "has ceased to exist" and they "are no longer fiduciaries," but this assertion is not accompanied by any citation to the record. *See* Defs.' Opp'n at 21.

4

basis to deny the Motion. *See* Defs.' Opp'n at 25. Although troublesome, the Court finds no need to reach the issue of a proper class definition, for the reasons discussed *infra*. Further, no party has requested a hearing on Plaintiff's Motion, and the Court finds that none is needed because the existing record is adequate to permit a reasoned decision.

## Standard of Decision

To obtain certification of a class action, Plaintiff must affirmatively demonstrate her compliance with Rule 23 by proving that the prerequisites to certification are met. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiff must satisfy all four parts of Rule 23(a) and a least one provision of Rule 23(b). *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (10th Cir. 2013). Rule 23(a) requires (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Id.*; *see Dukes,* 564 U.S. at 349.

## Discussion

Numerosity is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff asserts that over 1,000 Plan participants had Chesapeake stock attributed to their individual accounts as part of their investments. Defendants do not dispute that the numerosity requirement is satisfied.

Commonality is satisfied where 'there are questions of law or fact common to the class." *See* Fed. R. Civ. P. 23(a)(2). This requirement is met where the class members' claims share a common contention that "is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. Under ERISA, "the appropriate focus in a breach of fiduciary duty claim is the conduct of the defendants, not

the plaintiffs." *See In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 422 (N.D. Okla. 2005) (internal quotation omitted). Defendants do not dispute that Plaintiff's contention they acted improperly in maintaining the Plan's holding of Chesapeake stock is capable of classwide resolution. Thus, commonality is satisfied.

Typicality requires that the class representative's "claims or defenses . . . are typical of the claims or defenses of the class." *See* Fed. R. Civ. P. 23(a)(3). For typicality to be met, the class representative must "possess the same interest and suffer the same injury as the class members." *See East Tex. Motor Freight Sys., Inc., v. Rodriguez*, 431 U.S. 395, 403 (1977). Often closely related, Rule 23(a)(4) requires that the class representative "will fairly and adequately protect the interests of the class." In part, the adequacy inquiry "serves to uncover conflicts of interest between the named parties and the class they seek to represent." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).[6] Under the circumstances of this case, the requirements of typicality and adequacy of the class representative are closely related and, thus, are taken up together.

There is no question that Plaintiff possesses the same breach of fiduciary duty claim as any other Plan participants who retained Chesapeake stock in their individual account and that Plaintiff seeks a classwide remedy for the loss allegedly caused by Defendants' failure to divest the Plan of Chesapeake stock. Plaintiff urges an across-the-board rule for divestiture, relying on the opinion of her expert witness that a prudent fiduciary would have

---

[6] Adequacy also encompasses an inquiry into the competence and possible conflicts of class counsel. *Id*. n.20; *see Rutter & Wilbanks Corp. v. Shell Oil Co*., 314 F.3d 1180, 1187-88 (10th Cir. 2002).

disposed of the Plan's Chesapeake stock within three to six months after the spinoff. Plaintiff argues that she, like all participants who kept their investments in Chesapeake stock, have the same interests and the same remedy based on the same legal theory and the same course of conduct. *See* Pl.'s Mem. Supp. Mot. Class Certification at 12 (citing *In re Williams Cos. ERISA Litig.*, 231 F.R.D. at 422). Plaintiff also relies on ERISA's unique remedial provisions, which entitle any plan participant to sue a fiduciary for breaching a statutory duty and to obtain relief for "any losses to the plan resulting from each such breach." *See* 29 U.S.C. §§ 1109(a), 1132(a)(2). From this, Plaintiff contends her claims and interests align with the claims and interests of all other Plan participants who retained Chesapeake stock in their individual accounts.

If Plaintiff's arguments were accepted, no inquiry into her specific suitability to represent the proposed class of Plan participants would be needed. Any proposed class member with the same claim concerning the same conduct and seeking the same relief would automatically satisfy the requirements of typicality under Rule 23(a)(3) and adequacy under Rule 23(a)(4). This argument is contrary to the Supreme Court's admonition that despite "the usefulness of the class-action device[,] actual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982); *see also Vallario v. Vandehey*, 554 F.3d 1259, 1266-67 (10th Cir. 2009). Plaintiff must show that she is a typical and adequate representative of the proposed class before she can be authorized to litigate the case for absent parties.[7]

---

[7] Notably, Plaintiff seeks certification under provisions of Rule 23(b) that do not require notice to the class and do not allow class members to opt out. *See* Fed. R. Civ. P. 23(c)(2) and (e).

7

Plaintiff's particular circumstances include that her SSE employment ended in 2015 under a severance program and that her participation in the Plan ended in 2016; she signed a severance agreement and a general release in exchange for additional compensation. Plaintiff released all claims, including ERISA claims, against SSE and its affiliates, employees, officers, directors, and agents, and Plaintiff expressly agreed that she would "have no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action, or in a representative . . . capacity on behalf of a class of persons." *See* Defs.' Opp'n, Ex. 2.6 [Doc. No. 118-13], Severance Benefit Agreement ¶ 16(c). Defendants argue that these facts (and others) distinguish Plaintiff from other Plan participants whom she seeks to represent. Defendants assert that Plaintiff's claim is subject to a unique defense and she is contractually barred from serving as a class representative. *See* Defs.' Opp'n at 13-14 & n.14.

Plaintiff does not dispute the factual basis of Defendants' opposition. She instead denies the effectiveness of her general release to relinquish a representative ERISA claim under § 1132(a)(2); her response is silent regarding the written waiver of her right to bring a class action or act as a class representative. *See* Pl.'s Reply at 2-3 ("[i]t is well-established that an individual cannot release a Plan's claims like those brought in this case") (citing *In re Williams Cos. ERISA Litig.*, 231 F.R.D. at 423). Plaintiff contends an individual release "is, at best, 'a side issue'" that does not prevent class certification. *Id*. at 3.

Upon examination of the case authorities cited by Plaintiff, the Court finds they do not support her position. *See id*. at 3 & n.1. For example, in *In re Williams Cos. ERISA Litigation*, the proposed class representatives were plan participants who had not signed a

8

severance agreement or release; the defendants argued that the plaintiffs' claims were not typical of plan participants who had signed releases and that the plaintiffs would not adequately represent such participants. The district court found the issue of individual releases to be "troublesome" but not "disqualifying to class certification." *See Williams*, 231 F.R.D. at 423. The court decided to certify a class action subject to the condition that an additional class representative who had signed a release would be added to litigate release issues. *Id.* at 423-24. The court also reasoned that the parties could later request decertification of class members who had released their claims. *Id.* at 423.

In *In re Schering Plough Corp. ERISA Litigation*, 589 F.3d 585, 594-95 (3d Cir. 2009), the Third Circuit stated that § 1132(a)(2) claims for breach of fiduciary duties "are, by their nature, plan claims" and an individual release did not bar the plaintiff, who had signed a separation agreement and release, from bringing § 1132(a)(2) claims on behalf of the plan. However, the court held that the plaintiff still had to meet the typicality and adequacy requirements of Rule 23(a) and that her release presented a defense to liability that could affect her ability to satisfy those requirements. *See Schering*, 589 F.3d at 599-602; *see also id.* at 599 n.11 (commonality is easily satisfied in § 1132(a)(2) cases but "that does not mean that class certification is automatic" because typicality and adequacy must be considered). The case was remanded to the district court to consider the impact of the plaintiff's release on her ability to act as the sole class representative for a class of all plan participants with breach of fiduciary duty claims. *Id.* at 601-02. Similarly, in *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 313 (5th Cir. 2007), the Fifth Circuit held

9

that the district court erred by failing to consider the effect of individual releases on the certification of a § 1132(a)(2) class action.

In this case, Plaintiff seeks to represent absent Plan participants without addressing whether they, like her, signed releases of ERISA claims; there is no suggestion that other proposed class members are similarly situated in this respect. Setting aside the fact that Plaintiff also agreed not to pursue a class claim, the Court finds that Plaintiff provides insufficient information to permit a determination of her ability to advocate for Plan participants who did not sign individual releases. Contrary to Plaintiff's dismissive treatment of the release issue, the Court finds that the enforceability of the release and its effect on her individual recovery in this case present difficult questions. As noted by the Third Circuit, a claimant who has released her claim and so cannot recover for any loss attributable to her individual account may have no monetary stake in the outcome and little incentive to litigate on behalf of the Plan. *See Schering*, 589 F.3d at 599-600, 602. Plaintiff does not inform the Court what incentive she has to advocate on behalf of a Plan in which she is no longer a participant and from which she appears to have released any right of individual recovery.[8]

---

[8] The Supreme Court recognized in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 256 (2008), the uniqueness of defined contribution plans, for which § 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries [but] does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." Justice Thomas explained in his concurrence why defined contribution plans receive different treatment: a plan's assets consist of assets allocated to participants' individual accounts; any loss caused by a fiduciary's misconduct is "reflected in the accounts of the affected participants, and a recovery of those losses would be allocated to one or more individual accounts." *See id*. at 262 (Thomas, J., concurring in judgment). In this case, any recovery achieved for a loss suffered by the Plan would be allocated to affected individual accounts, but Plaintiff would have no right of recovery if she released her individual claim against the Plan.

In short, Plaintiff provides an insufficient basis for the Court to determine that her claims are typical of the claims of other Plan participants who retained Chesapeake stock in their individual accounts or that she is an adequate representative of their interests. The Court therefore finds that Plaintiff has not carried her burden to show that all requirements of Rule 23(a) are satisfied.

## Conclusion

For these reasons, the Court finds that Plaintiff has failed to demonstrate that all requirements of Rule 23(a) are satisfied and that she should be authorized to proceed with a class action on behalf of other participants in SSE's defined contribution Plan. Further, the Court finds that Defendants' Motions to exclude the opinions of Plaintiff's expert under *Daubert* and Fed. R. Evid. 702 are moot.[9]

IT IS THEREFORE ORDERED that Plaintiff's Motion for Class Certification [Doc. No. 113] is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Exclude Expert Testimony of Samuel Halpern [Doc. No. 120] and Defendants' Motion to Exclude Expert Testimony of Steve Pomerantz [Doc. No. 121] are DENIED without prejudice to a future submission.

---

[9] Defendants assert in the Motions that the experts' opinions are unreliable and should not be considered in deciding whether to certify a class action. Under this Order, however, the Court does not reach issues for which Plaintiff tendered the experts' opinions. Also, to the extent the opinions bear on merits issues, Defendants' Motions are premature because merits discovery is incomplete and no case schedule for filing *Daubert* motions has been entered.

IT IS SO ORDERED this 29th day of September, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge